AMERICAN BANK & TRUST COMPANY OF PA., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 997–70.   Filed August 29, 1973.

*Alphonsus R. Romeika*, for the petitioner.
*Albert J. O'Connor*, for the respondent.

### OPINION

GOFFE, *Judge:* Respondent determined a deficiency in the Federal income tax of petitioner for the taxable year 1964 in the amount of $46,448. The sole issue for determination is whether petitioner, a national bank, properly computed an addition to its bad debt reserve for the taxable year 1964.

All of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein and adopted as our findings.

Petitioner (sometimes hereinafter referred to as American) is a corporation organized in 1932 under the laws of the Commonwealth of Pennsylvania. It is engaged in the business of banking and its principal place of business is at Reading, Pa.

Petitioner filed its Federal income tax return for the taxable year 1964 with the district director of internal revenue at Philadelphia, Pa.

On August 13, 1964, the Schuylkill Trust Co. (hereinafter Schuylkill) was merged into American. Schuylkill was a corporation organized in 1887 under the laws of Pennsylvania and was engaged in the business of banking. Its principal place of business was at Pottsville, Pa.

Pursuant to the merger, the shareholders of Schuylkill received one share of American in exchange for one share of Schuylkill and, therefore, American became the surviving corporation in the merger. The deposit and loan accounts of Schuylkill were combined with those of American. The capital, surplus, and reserve accounts of American were increased by the balances in the accounts of Schuylkill.

Both banks had utilized the reserve method of accounting for bad debts for several years prior to the merger. They based their additions to their bad debt reserves on the average loss ratio for the years

1928 through 1947. At the end of each of their respective taxable years, the average loss ratio was applied to the amount of the loans outstanding in order to arrive at the allowable addition to the reserve. The 20-year loss ratios of American and Schuylkill, separately and on a consolidated basis, are 1.5326, 2.099607, and 1.5343, respectively.

The following shows the balances in the eligible loan accounts as of December 31, 1963, the balance of the reserve for bad debt account on December 31, 1963, and the reserve ratios as of December 31, 1963, of each of the banks separately and combined:

|  | American | Schuylkill | Combined |
|---|---|---|---|
| Eligible loans, 12/31/63 | $120, 027, 187 | $5, 871, 658 | $125, 898, 844 |
| Reserve for bad debts, 12/31/63 | $5, 518, 610 | $187, 460 | $5, 706, 070 |
| Ratio of reserve to eligible loans | . 045978 | . 031926 | . 045323 |

In its return for the taxable year 1964, petitioner claimed a deduction for an addition to its bad debt reserve in the amount of $944,145, computed as follows:

| | |
|---|---|
| Eligible loans at 12/31/64, including both American and Schuylkill | $141, 826, 285. 00 |
| Highest 20-year average loss ratio (American only) | X. 015326 |
| Annual addition | 2, 173, 629. 64 |
| Reserve ceiling (3 times annual addition) | 6, 520, 888. 92 |
| Balance in reserve 1/1/64 | 5, 518, 609. 98 |
| Addition resulting from Schuylkill merger | 186, 244. 21 |
| Total | 5, 704, 854. 19 |
| Less: Net 1964 charges to the reserve | 128, 110. 52 |
| Balance at 12/31/64 prior to addition | 5, 576, 743. 67 |
| Ceiling as determined above | 6, 520, 888. 92 |
| Addition to the reserve | 944, 145. 00 |

In his statutory notice of deficiency the Commissioner determined that the addition to petitioner's reserve for bad debts for the year 1964 should be $851,249, computed as follows:

| | |
|---|---|
| Eligible loans, 12/31/64 | $141, 826, 285 |
| Bad debt reserve ratio | X. 045323 |
| Bad debt reserve ceiling 12/31/64 | 6, 427, 993 |
| Reserve balance before 1964 addition | 5, 576, 744 |
| Addition allowable to attain ceiling | 851, 249 |

The issue presented is very narrow. Rev. Rul. 64-334, 1964-2 C.B. 61, provides for a limitation on the deductible addition to the reserve

for bad debts of banks. Under such limitation the bank cannot increase its reserve for bad debts so that the ratio of that reserve to its loans outstanding exceeds the ratio that existed for the immediately preceding taxable year.

Respondent contends that petitioner, in computing the limitation, must use the combined ratio of American and Schuylkill on December 31, 1963, and petitioner contends that only the ratio of American should be applied because American and Schuylkill were not merged until after December 31, 1963.

In this case the amount of the limitation determines the amount of the deduction for the addition to the reserve for bad debts of petitioner for the taxable year before the Court.

Petitioner does not challenge the validity of Rev. Rul. 64–334 nor the validity of Mim. 6209, 1947–2 C.B. 26; Rev. Rul. 54–148, 1954–1 C.B. 60; Rev. Rul. 57–350, 1957–2 C.B. 144; and Rev. Rul. 65–105, 1965–1 C.B. 116, all of which relate to the issue here. Nor does petitioner contend that the Commissioner has abused the discretion granted him by section 166(c) of the Internal Revenue Code.[1]

The issue simply involves the correct interpretation and application of Rev. Rul. 64–334.

Section 166(c) of the Internal Revenue Code provides for a reasonable addition to a reserve for bad debts in lieu of a deduction for those debts which become wholly or partially worthless. The Secretary or his delegate is granted discretion with respect to the allowance of such a deduction.

Section 1.166–4, Income Tax Regs., the validity of which is not in issue here, provides that under certain conditions a deduction is allowable for a reasonable addition to the reserve for bad debts of the taxpayer and the reasonableness of the addition shall be determined in the light of facts as they exist at the end of the taxable year. It further provides that the reasonableness will vary as between classes of business and with conditions of business prosperity.

The Commissioner of Internal Revenue, pursuant to section 166(c), Internal Revenue Code of 1954 and section 23(k)(1), Internal Revenue Code of 1939, issued published rulings setting forth the rules to be followed by banks in computing their deductible additions to reserves for bad debts.

The pertinent portions of the mimeograph and rulings are as follows:

MIMEOGRAPH 6209

2. In determining a reasonable annual addition to a reserve for bad debts by a bank it is believed to be fair and sufficiently accurate to resort to the average annual bad-debt loss of the bank over a period of 20 years, to include the taxable year, as constituting a representative period in the bank's history and to accept

---

[1] All references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

the equivalent percentage of presently outstanding loans as indicative of the probable annual accruing loss. The Tax Court has held that the "use of the reserve for bad debts is not inherently inconsistent with a cash basis where, as here, the reserve is against loss of capital only * * * and contains no element of income which has never been reported. * * * Such a reserve for loss of capital does not differ materially from a reserve for depreciation which is set up on a percentage basis rather than on the basis of actual depreciation suffered." (See *Estate of Maurice S. Saltstein* v. *Commissioner,* 46 B.T.A., 774, 777, acquiescence, C.B. 1942–1, 14.) However, such reserve can not be permitted to accumulate indefinitely simply because of the possibility that at some future date large losses may be concentrated within a relatively short period of time and operate to absorb the greatest probable reserve. To permit this would sanction the deduction of a mere contingency reserve for losses, which is not an allowable deduction for income or excess profits tax purposes. This latter rule makes imperative the imposition of some reasonable ceiling on the accumulation of the reserve other than such indefinite limitation as might eventually prevail under a moving average method.

3. The Bureau has accordingly approved the use by banks of a moving average experience factor for the determination of the ratio of losses to outstanding loans for taxable years beginning after December 31, 1946. Such a moving average is to be determined on a basis of 20 years, including the taxable year, as representing a sufficiently long period of a bank's experience to constitute a reasonable cycle of good and bad years. The percentage so obtained, applied to loans outstanding at the close of the taxable year, determines the amount of permissible reserve in the case of a bank changing to the reserve method in such year (see first year in following computation) and the minimum reserve which the taxpayer will be entitled to maintain in future years (see second year in following computation). A bank, following a change to the reserve method of accounting for bad debts, may continue to take deductions from taxable income equal to the current moving average percentage of actual bad debts times the outstanding loans at the close of the year, or an amount sufficient to bring the reserve at the close of the year to the minimum mentioned above, whichever is greater. Such continued deductions will be allowed only in such amounts as will bring the accumulated total at the close of any taxable year to a total not exceeding three times the moving average loss rate applied to outstanding loans (see fifth year in following computation).

\* \* \* \* \* \* \*

4. In computing the moving average percentage of actual bad debt losses to loans, the average should be computed on loans comparable in their nature and risk involved to those outstanding at the close of the current taxable year involved. Government insured loans should be eliminated from prior year accounts in computing percentages of past losses, also from the current year loans in computing allowable deductions for additions to the reserve. Losses not in the nature of bad debts resulting from the ordinary conduct of the present business should also be eliminated in computing percentages of prior losses.

5. A newly organized bank or a bank without sufficient years' experience for computing an average as provided for above will be permitted to set up a reserve commensurate with the average experience of other similar banks with respect to the same type of loans, preferably in the same locality, subject to adjustment after a period of years when the bank's own experience is established.

REVENUE RULING 54–133

Mim. 6209, C.B. 1947–2, 26, relating to the reserve method of accounting for bad debts in the case of banks, contemplates that where a bank has been in existence

for 20 years, including the taxable year, it may compute its moving average percentage of actual bad debt losses to outstanding loans, upon which its reserve for bad debts is based, on the basis of its own independent data, including any losses it has sustained on loans taken over when certain assets of another bank (which continued in business) were acquired and some of its liabilities assumed.

The bad debt experience factor which covers the experience of a 20-year period, including that of the current taxable year, will, when applied to loans outstanding at the close of the year, provide for anticipated losses as they occur on the loans acquired. Under the provisions of Mim. 6209, it is not permissible to use the experience of the bank from which the loans were acquired for the purpose of computing additions to the reserve for bad debts.

### Revenue Ruling 57–350

In Revenue Ruling 54–148, C.B. 1954–1, 60, an alternative method of computing additions to a reserve for bad debts was approved for use by banks in lieu of the 20-year moving average method authorized in Mimeograph 6209, C.B. 1947–2, 26. Such alternative method contemplates that each bank using the reserve method of accounting for bad debts may select any 20 consecutive years after the year 1927 as an experience factor base, regardless of whether the bank was in existence, and therefore had experience of its own, for all or part of the 20-year period selected. For that portion of the 20-year period selected during which the bank was in existence, it is required to use its own experience. For that portion of the 20-year period selected during which the bank was not in existence, section 4.03 of Revenue Ruling 54–148, *supra,* permits a bank to fill in such years with the bad debt experience of other similar banks with respect to the same type of loans, preferably in the same locality. Thus, for example, a bank with continuous existence since December 31, 1933, may select the period 1930 through 1949, use its own bad debt experience for the years 1934 through 1949, and fill in the years 1930 through 1933 with the bad debt experience for those years of other similar banks, preferably in the same locality.

### Revenue Ruling 64–334

Pending completion of a study of published rulings relating to the computatation of annual additions to banks' reserves for bad debts and the publication of any changes resulting therefrom, a transitional limitation will be applied to taxable years ending on December 31, 1964. Under this transitional limitation, the amount of the annual addition, computed under Mimeograph 6209, C.B. 1947–2, 26, and Revenue Ruling 54–148, C.B. 1954–1, 60, may not increase the balance in a bank's bad debt reserve at the close of the taxable year to a percentage of eligible loans which is larger than the percentage which the bank's reserves bore to eligible loans at the close of the immediately preceding taxable year.

This transitional limitation will not be applied to banks organized after December 31, 1961, or to a bank which changed to the reserve method of accounting for bad debts for a taxable year beginning after December 31, 1961, pursuant to permission granted by the Commissioner of Internal Revenue after such date.

In general, the transitional limitation will permit a bank to deduct additions to its bad debt reserve for the year 1964 equal to actual losses less recoveries plus an amount computed by applying its established actual reserve ratio to its net increase in loans. These deductions for 1964, therefore, will continue at about the same aggregate level for the banking industry as deductions taken in preceding years.

The limitation set forth herein is only transitional and does not in any way represent the nature of the revised procedures which are being considered for future years.

## REVENUE RULING 65–105

Revenue Ruling 64–334, C.B. 1964–2, 61, sets forth a transitional limitation applicable to annual additions to banks' reserves for bad debts for taxable years ending on December 31, 1964. Under this transitional limitation the amount of the annual additions, computed under Mimeograph 6209, C.B. 1947–2, 26, and Revenue Ruling 54–148, C.B. 1954–1, 60, may not increase the balance in a bank's bad debt reserve at the close of the taxable year to a percentage of eligible loans which is larger than the percentage which the bank's reserves bore to eligible loans at the close of the immediately preceding taxable year.

Revenue Ruling 64–334 states, however, that the transitional limitation will not be applied to banks which either adopted the reserve method of accounting for bad debts for a taxable year beginning after December 31, 1961, or were organized after December 31, 1961.

Subsequent to the publication of Revenue Ruling 64–334, information was submitted to the Internal Revenue Service by representatives of the banking industry which indicates that new banks generally experience special difficulties in establishing bad debt reserves for several years after their organization because of limited net operating income during their formative period.

Available information also indicates the possibility that some banks may have had loan losses in 1963 of sufficient magnitude to abnormally reduce their actual reserves at the end of that year. In such cases the transitional limitation provided in Revenue Ruling 64–334 would not function as intended.

In view of the foregoing, Revenue Ruling 64–334 is hereby modified to restate the exception of newly organized banks from the transitional limitations set forth therein as follows. The transitional limitations on additions to banks' reserves for bad debts will not apply to banks which were organized after December 31, 1953, and which are not successors in tax-free or partially tax-free transactions to banks which were in existence on December 31, 1953.

The "transitional limitation" prescribed by Rev. Rul. 64–334 does not cover the factual situation involved here: i.e., banks which merged between December 31, 1963, and December 31, 1964.

Petitioner argues that Rev. Rul. 64–334 is stated in singular terms and can refer only to the ratio of American and not to the combined ratio of American and Schuylkill. Petitioner also points out that Rev. Rul. 65–105 was issued to eliminate from the coverage of Rev. Rul. 64–334 banks organized after December 31, 1953, which are not successors to banks which were in existence on December 31, 1953, in tax-free or partially tax-free transactions. Both American and Schuylkill were in existence on December 31, 1953.

Respondent appears to contend that because American, on December 31, 1964, was a merged bank, it has no 20-year experience of its own upon which to base its ratio and the best experience available is the combined experience of American and Schuylkill which is a permissible substitute under the provisions of Rev. Rul. 54–133.

The experience ratio of each of American and Schuylkill on December 31, 1963 was the 20-year average prescribed by Mim. 6209. It is true that Rev. Rul. 64–334 does not specifically deal with merged banks; nevertheless, Rev. Rul. 64–334 is a transitional rule holding the banks (with exceptions not applicable here) to the method employed for the immediately preceding taxable year until new rules could be formulated. Had the banks not merged each would have used the ratio it used on December 31, 1963.

By using only the ratio of American at December 31, 1963, and applying it to loans of both banks as of December 31, 1964, petitioner seeks to substitute its experience for that of Schuylkill. Substituted experience is permitted if it is that of "other similar banks with respect to the same type of loans, preferably in the same locality." Mim. 6209, Rev. Rul. 57–350 (quoted above). Petitioner offered no proof to demonstrate a similarity between the experience of American and that of Schuylkill and we strongly suspect that little similarity exists. The loans outstanding of American exceeded by 20 times those of Schuylkill on December 31, 1963. We take judicial notice of the facts that Reading, Pa., where American was located was 34 miles from Pottsville, Pa., where Schuylkill was located. The population of the two cities, according to the U.S. Census, was as follows:

| | 1960 | 1970 |
|---|---|---|
| Reading, Pa | 98,177 | 87,643 |
| Pottsville, Pa | 21,659 | 19,715 |

The similarity of banks with the same type of loans is a factual determination upon which petitioner has offered no proof. For an example of the kinds of proof involved see *First National Bank in Olney*, 44 T.C. 764 (1965), affd. 368 F. 2d 164 (C.A. 7, 1966).

Petitioner points out that the interpretation of Rev. Rul. 64–334 involved herein is a case of first impression and we find it so to be. Nevertheless, Rev. Rul. 64–334 is, by its own terms, a transitional rule to permit the Commissioner to reexamine the methods of computing the annual addition to the reserves for bad debts of banks. It merely stopped the clock as of December 31, 1963.

We conclude, therefore, that Rev. Rul. 64–334 must be construed in light of Mim. 6209, Rev. Rul. 54–148, and Rev. Rul. 57–350.

Mim. 6209 has been construed to permit a bank, successor to another bank, both of which operated during a portion of the 20-year base period, to utilize the bad debt experience of both banks for the period that both banks were in operation. *Pullman Trust and Savings Bank v. United States*, 235 F. Supp. 317 (N.D. Ill. 1963), affirmed per curiam 338 F. 2d 666 (C.A. 7, 1964). We recognize that both banks were being operated by identical personnel during the 8 years of

reorganization. Nevertheless, because the District Court held that the Commissioner abused his discretion by not permittting the combined experience, we feel that the case is persuasive to show that Mim. 6209 contemplates combined bad debt experience of predecessor banks.

Petitioner argues that if Rev. Rul. 64–334 omitted any reference as to merged banks through inadvertence that such omission would have been supplied by Rev. Rul. 65–105 but it was not. We do not see that such a conclusion necessarily follows.

The language of Rev. Rul. 65–105 quoted above explains the purpose of that ruling. There is no showing that the subject of the bad debt experience of merged banks was brought to the attention of the Commissioner or his representatives when Rev. Rul. 65–105 was issued. The Commissioner's failure to modify Rev. Rul. 64–334 has no effect either way on our interpretation of Rev. Rul. 64–334.

Accordingly, we hold that Rev. Rul. 64–334 is a transitional rule extending the concepts of bad debt reserves established by Mim. 6209, Rev. Rul. 54–148, and Rev. Rul. 57–350 and those concepts require that petitioner utilize the bad debt experience ratios of both American and Schuylkill for the 20-year base period.

*Decision will be entered for the respondent.*

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.